532 So.2d 985 (1988)
Clim JIMPSON a/k/a Clim Jimison
v.
STATE of Mississippi.
No. 57953.
Supreme Court of Mississippi.
September 14, 1988.
Rehearing Denied November 9, 1988.
*986 William B. Kirksey, Kirksey & Associates, Jackson, for appellant.
Edwin Lloyd Pittman and Mike Moore, Attys. Gen. by John R. Henry, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and PRATHER and ROBERTSON, JJ.
PRATHER, Justice, for the court:
A post-arrest lineup, held in the absence of a defense counsel, is the focal point of this appeal. Finding that the lineup evidence was harmless beyond a reasonable doubt, this Court affirms the conviction. Defendant Clim Jimpson was tried and convicted in the Circuit Court of Hinds County, sitting on change of venue in Jackson County, Mississippi for aggravated assault against Linda Grantham. He was sentenced to life imprisonment as a habitual offender, pursuant to § 99-19-83, Miss. Code Ann. (1987 Supp.) From this conviction, the defendant perfects this appeal and assigns as error the following:
(1) THE TRIAL COURT ERRED IN ALLOWING WITNESSES KIRKLAND AND ROGERS TO TESTIFY THAT THEY PREVIOUSLY IDENTIFIED APPELLANT IN PRETRIAL LINEUPS BECAUSE: (A) THE LINEUPS WERE CONDUCTED SUBSEQUENT TO THE COMMENCEMENT OF PROSECUTION AGAINST APPELLANT WITHOUT THE ASSISTANCE OF COUNSEL AND IN THE ABSENCE OF AN EXPRESS WAIVER THEREOF; AND (B) SUCH TESTIMONY WAS INADMISSIBLE HEARSAY WHICH BOLSTERED THE TRIAL TESTIMONY OF THE SAID WITNESSES.
(2) THE TRIAL COURT ERRED IN ADMITTING EVIDENCE OF FLIGHT.
(3) THE TRIAL COURT ERRED IN OVERRULING DEFENSE COUNSEL'S OBJECTION TO THE COMMENT OF THE DISTRICT ATTORNEY, IN CLOSING ARGUMENT, ON THE APPELLANT'S FAILURE TO TESTIFY.
(4) THE TRIAL COURT ERRED IN CONSIDERING EVIDENCE NOT PROPERLY BEFORE IT AT THE SENTENCING PHASE OF THIS TRIAL.
(5) THE CUMULATIVE EFFECT OF THE AFORESAID ERRORS WAS TO DEPRIVE CLIM JIMPSON OF HIS FUNDAMENTAL RIGHT TO A FAIR TRIAL.

I.
On February 12, 1985, at about 2:00 p.m., Linda Grantham, a senior lending officer at the Raymond/Terry Road Branch of Deposit Guaranty National Bank returned to the bank from lunch. She parked her 1983 Celica in the parking lot behind the bank and got out of the car, with keys and purse in her hand. A man identified by Mrs. Grantham as the appellant then asked her the time.
When she looked up from her watch, she saw the appellant coming at her with a silver-colored handgun in his hand. She testified that the appellant wore glasses and a hat and a green outfit. Other witnesses testified that the appellant was not wearing a cap and that his outfit was brown, not green.
When the appellant told Mrs. Grantham that she was going to take him "somewhere," she began screaming, and the appellant struck her in the mouth. At this point the appellant had his arms wrapped around Mrs. Grantham's head. In the ensuing struggle, the appellant shot Mrs. Grantham in the back of the neck; the bullet severed her spinal cord completely, leaving her totally and permanently paralyzed below the neck level. After being shot, Mrs. Grantham fell in the parking lot, but did not lose consciousness. The appellant *987 dragged her to her car and threw her into it, her head coming to rest in the driver's seat. Mrs. Grantham kept her eyes nearly closed so that the appellant would believe she was dead. Mrs. Grantham testified that two to four minutes passed between the time she was asked what time it was by the appellant and the time that he shot her. Mrs. Grantham was unable to move; she heard the branch reopen at 2:30 and tried to yell in order to get someone's attention. At about 3:20 she was found by Willie Ginn, another member of the branch staff.
Based on Mrs. Grantham's tentative description and the description given by a Mr. Smith, of a man seen on the morning of February 12, in a trailer park next to the bank, Jackson police officers began looking for the appellant. On February 14, Officer Miles Floyd of the Jackson Police Department was working a funeral service at the intersection of Collier and Fontaine Streets in Jackson. He observed a black male subsequently identified by him at trial as the appellant running in the areas of Bailey and Collier. Floyd proceeded onward and again noticed the appellant standing at the corner of a house at Douglas and Rockdale. The appellant ran across the street to another house and went behind it. A gate to the fence at this house was left open and Floyd entered it in an effort to find the appellant. Floyd noticed a shed behind the house; he looked into it and saw the appellant standing in a corner, breathing hard. Floyd realized that the man in the shed resembled the appellant from posters released by police and called for assistance. On duty officers arrived and took the appellant into custody.
Detective C.M. Crisco of the Jackson Police Department interrogated the appellant on the 14th of February subsequent to the appellant's arrest. Present with Crisco were Detectives J.W. Monroe and R. Jordan. The appellant was advised of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and the appellant agreed to waive those rights. The appellant signed a waiver form, and his written and signed confession was introduced into evidence. After initially denying his involvement in the crime, the appellant admitted that he shot Mrs. Grantham and that he acted alone. He stated that after shooting her he ran behind Mart 51, took Mrs. Grantham's billfold from her purse and threw the purse into a dumpster located behind Mart 51. The appellant took the detectives to the dumpster, one of about ten in the area, where the purse was found in the southwest corner at approximately 5:15 p.m. It was identified by Mrs. Grantham as being her purse.
The appellant told the detectives that he accosted Mrs. Grantham to get some money, but that she refused to give him her purse, at which point he shot her. Appellant stated that he put Mrs. Grantham's billfold in the back of a truck driven by Woodrow Rogers after retrieving a five dollar bill from it. The billfold (pocket-book) was found by Woodrow Rogers when he was unloading the truck. Rogers gave the billfold and its contents to Charles Brewer. This billfold was identified by Mrs. Grantham as being hers. The billfold contained credit cards, checks and deposit slips, all in Mrs. Grantham's name, along with her bank employee identification card.
Rogers testified that on February 12, 1985, he picked the appellant up at some point in time before 3:00 p.m. off Winter Street, which is less than a mile from the Raymond/Terry Road branch of the bank. Rogers testified that he was flagged down by the appellant, and drove him to Great Southern Industries, a 15 minute trip from where the appellant was picked up. Rogers was employed by Great Southern to haul scrap paper. When Rogers arrived at the paper plant he went in to talk to Brewer, and the appellant disappeared. Rogers identified the appellant at trial as the man who flagged him down and whom he drove to Great Southern on February 12, 1985.
The appellant was convicted of the offense charged in the indictment. At a separate sentencing hearing the appellant was sentenced as an habitual offender pursuant to § 99-19-83 of the Miss.Code.Ann. (Supp. 1987).

*988 II.
DID THE TRIAL COURT ERR IN ALLOWING WITNESSES KIRKLAND AND ROGERS TO TESTIFY THAT THEY HAD PREVIOUSLY IDENTIFIED THE APPELLANT IN PRE-TRIAL LINEUPS BECAUSE: (A) THE LINEUPS WERE CONDUCTED SUBSEQUENT TO THE COMMENCEMENT OF PROSECUTION AGAINST APPELLANT WITHOUT ALLOWING ASSISTANCE OF COUNSEL AND IN THE ABSENCE OF AN EXPRESS WAIVER THEREOF; AND (B) SUCH TESTIMONY WAS INADMISSIBLE HEARSAY WHICH BOLSTERED THE TRIAL TESTIMONY OF THE SAID WITNESSES.

A. Were the lineups conducted improperly?
Among the rights guaranteed under both the United States and Mississippi Constitutions is the right to counsel. This right to counsel in the U.S. Constitution is found in the Sixth Amendment: "In all criminal prosecutions, the accused shall enjoy the right... to have the assistance of counsel for his defense." The parallel provision in the Mississippi Constitution reads as follows: "In all criminal prosecutions the accused shall have a right to be heard by himself or counsel ..." Miss. Const., Art. III. § 26 (1890). Page v. State, 495 So.2d 436, 439 (Miss. 1986); Cannaday v. State, 455 So.2d 713, 722 (Miss. 1984); Patterson v. Illinois, ___ U.S. ___, 108 S.Ct. 2389, 2393, 101 L.Ed.2d 261 (1988).
The United States Supreme Court has held that the Sixth Amendment right to counsel attaches once adversarial "judicial proceedings" have been initiated. Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). Kirby, supra, held that these proceedings may take the form of an indictment, information, arraignment or preliminary hearing. See also, Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). These cases suggest that the Court look to the state procedure to determine when formal adversarial proceedings have been initiated.
The most recent formulation of when the right to counsel attaches under Mississippi law begins with Cannaday v. State, 455 So.2d 713 (Miss. 1984), where the Court held that the right to counsel may attach as early as the issuance of a warrant. Id. at 722. See also, Livingston v. State, 519 So.2d 1218 (Miss. 1988); Page v. State, 495 So.2d 436, 439 (Miss. 1986); and, Nixon v. State, 533 So.2d 1078 (Miss. 1987). More recently we have refined our view to hold that state law effects attachment of the right to counsel after arrest and at the point when the initial appearance "ought to have been held". May v. State, 524 So.2d 957, 967 (Miss. 1988); Nicholson v. State, 523 So.2d 68, 77 (Miss. 1988).
In the case at bar, Jimpson alleges that he was denied the right to have counsel present at each of the lineups where he was positively identified by both Mae Kirkland and Woodrow Rogers. Due to the nature of the right being asserted here by Jimpson, and the circumstances surrounding this case, a careful examination of Sixth Amendment law within the framework of the facts in this case is required.
When Jimpson was arrested on February 14, 1985, pursuant to an arrest warrant, he was given his Miranda rights prior to being interrogated. Detective C.M. Crisco testified that he fully explained these rights to Jimpson twice and that Jimpson indicated his understanding of these rights, including his right to an attorney. Jimpson nonetheless indicated his willingness to talk with the police and signed a written waiver of these rights.
Jimpson was placed in a lineup the next day, February 15, and was positively identified by Mae Kirkland and Woodrow Rogers. No attorney was present at the lineup. It is this lineup which Jimpson now challenges on appeal. There is no dispute in the record that Jimpson was in custody as the result of an arrest warrant when this lineup was held. It thus seems clear that Jimpson's right to counsel had attached by the time he was placed in the lineup. The point when the initial appearance *989 ought to have been held was well past. See Rule 1.04, Miss.Unif.Crim.R.Cir. Ct.Prac.
The protections afforded by the right to counsel are to assure that a defendant "need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial." United States v. Wade, 388 U.S. 218, 226, 87 S.Ct. 1926, 1932, 18 L.Ed.2d 1149, 1157 (1967). In the case at bar, Jimpson has not challenged the propriety of the lineup itself; rather, he is citing as error the fact that counsel was not present at the lineup.
A lineup is a "critical stage". An accused enjoys the right to counsel at a lineup because there exists the possibility of irremediable prejudice if counsel is not afforded. Once the right to counsel has attached, "[a]t all critical stages thereafter, the accused is of right entitled to access to counsel, absent a specific, knowing and intelligent waiver tied to that stage." Nicholson, supra, at 76 (Robertson, J., concurring).
It appears that Jimpson was here denied his right to counsel at lineup. His claim fails, however, for one fundamental reason.
In Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the United States Supreme Court first recognized the doctrine of "harmless constitutional error."
We conclude that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the federal constitution, be deemed harmless, not requiring the automatic reversal of the conviction.
386 U.S. at 21, 87 S.Ct. at 827, 17 L.Ed.2d at 709.
This principle is applicable to the case now before this Court. Although Jimpson's right to counsel had attached at the lineup, thereby constituting a technical violation of his Sixth Amendment right to counsel, the record is clear as to both witnesses, that their identification was based on their view of the defendant at the bank and its vicinity and was not based on the lineup identification. See York v. State, 413 So.2d 1372, 1380-83 (Miss. 1982).
It should also be noted that in this case, even if the lineup was improper, the amount of evidence favoring conviction was overwhelming. Jimpson here protests his lack of counsel at the lineup, not the lineup itself. Even without the lineup identification, the amount of other evidence present in this case is overwhelming. See Meadows v. Kuhlmann, 812 F.2d 72, 76 (2d Cir.1987); Robinson v. Percy, 738 F.2d 214, 220-21 (7th. Cir.1984).
In summary, this Court holds that even though the constitutional right to counsel had attached at the critical stage of a lineup identification held after arrest, there is no reversible error here. The error is harmless for there is no sufficient showing in the record that the identification testimony was impermissibly tainted by the lineup being held without the presence of legal counsel. Nicholson, supra at 77.

B. Was the Identification Testimony Improper Bolstering?
Jimpson claims that the identification testimony of Mae Kirkland and Woodrow Rogers is at least partially based on their identification of him in the lineup at issue here. As such, he claims that this identification is hearsay and represents improper bolstering of their credibility under traditional Mississippi case law.
In Henry v. State, 209 So.2d 614 (Miss. 1968), this Court noted the general rule that bolstering the credibility of a witness was not allowed, Id. at 617, but then noted that corroborating testimony is allowed for collateral issues. Id. In the case at bar, testimony was used not to bolster the credibility of the witnesses, but rather to identify the defendant. Thus, the Henry rule applies.
The "bolstering" rule was later modified greatly in Fells v. State, 345 So.2d 618 (Miss. 1977). This Court recognized the benefit of allowing "prior identification as independent, substantive evidence of identity *990 by a witness who is available at trial for cross-examination ..." Id. at 621.
This rule was recently codified in the Mississippi Rules of Evidence as a form of non-hearsay:
A statement is not hearsay if [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is one of identification of a person made after perceiving him.
Rule 801(d)(1)(C). This rule was recently cited and followed by the Court in Livingston v. State, 519 So.2d 1218, 1221 (Miss. 1988).
The first assignment of error fails on both grounds.

III.

DID THE TRIAL COURT ERR IN ADMITTING EVIDENCE OF FLIGHT?
Miles Floyd, the arresting officer in this case, was working in an off-duty capacity on February 14 as the escort for a funeral service. While engaged in this activity, he noticed an unidentified black man running near Bailey and Collier Streets. Floyd testified that he was suspicious of the man's activities and began following him in an attempt to question him. He found the man in a shed near Douglas and Rockdale Streets, breathing hard. After getting a good look at the man's face, Officer Floyd realized that the man appeared to be Clim Jimpson, whose face he had seen on several wanted posters. He testified that he did not know that Jimpson was also wanted in connection with a house burglary in Pocahontas. Floyd called for backup and Jimpson was arrested. Jimpson now claims as an assignment of error that the admission of this testimony regarding his attempt to avoid arrest constituted improper evidence of flight.
It should be noted initially that many cases dealing with flight address the issue in the context of having an improper flight instruction given to the jury. These cases include several relied upon by the appellant in his brief. Quarles v. State, 199 So.2d 58 (Miss. 1967), Fuselier v. State, 468 So.2d 45 (Miss. 1985). See also, Pannell v. State, 455 So.2d 785 (Miss. 1984). In the case at bar, the trial court refused to grant a jury instruction on the flight issue, thereby diminishing the probative value of the above-cited cases.
It is also a general rule that evidence of flight is admissible on the issue of guilty knowledge. Mariche v. State, 495 So.2d 507, 508 (Miss. 1986); Hill v. State, 432 So.2d 427, 438 (Miss. 1983); McClendon v. State, 387 So.2d 112, 115 (Miss. 1980). This principle can also be found in 2 Wigmore on Evidence, 3d Ed., § 279:
It is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself.
Under Rule 403 of the Mississippi Rules of Evidence, relevant testimony "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence." It is the opinion of this Court that the probative value of this evidence was not "substantially outweighed" by its prejudicial value, and thus this assignment of error is overruled.

IV.

DID THE DISTRICT ATTORNEY IMPROPERLY COMMENT ON THE DEFENDANT'S FAILURE TO TESTIFY DURING HIS CLOSING ARGUMENT?
The Fifth Amendment of the United States Constitution states that no person may be compelled to take the witness stand against himself. This protection also exists in Art. III, § 26 of the Mississippi Constitution ("... and he shall not be compelled to give evidence against himself ..."). There is also statutory support for this proposition in Mississippi law:
The accused shall be a competent witness for himself in any prosecution for crime *991 against him. The failure of the accused, in any case, to testify shall not however operate to his prejudice or be commented on by counsel.
§ 13-1-9, Miss. Code Ann. (1972).
Balanced against this interest however, is the rule that attorneys are to be given wide latitude in making their closing arguments. Johnson v. State, 477 So.2d 196, 209 (Miss. 1985). Thus, although a direct reference to the defendant's failure to testify is strictly prohibited, all other statements must necessarily be looked at on a case by case basis.
In the case at bar, during closing arguments the District Attorney said:
Breathing hard just as the police officer that arrested him said he does after he runs and what was he doing running? A mile from the bank at exactly the time the woman got shot when he said he lived out in north Jackson and didn't even know Jackson. Didn't even know the streets, except he had some folks out on Bailey Avenue and where was he arrested? Bailey Avenue. Now, what was he doing down there? They haven't bothered to tell you that.
Jimpson has objected to the above statement as an improper comment on his failure to testify. An objection was made to the statement at trial, but it was overruled.
As noted earlier, this Court has recognized that a direct comment on a defendant's failure to testify is not allowed and constitutes reversible error. Livingston v. State, 525 So.2d 1300, 1305-08 (Miss. 1988), Bridgeforth v. State, 498 So.2d 796, 797-8 (Miss. 1986). Prosecutors are also forbidden from referring to a defendant's failure to testify "by innuendo and insinuation." Wilson v. State, 433 So.2d 1142, 1146 (Miss. 1983).
There is a difference however, between a comment on the defendant's failure to testify and a comment on the failure to put on a successful defense. Terry Road (the location of the bank) is not located in north Jackson; therefore it is proper for the District Attorney to question the defense's inability to successfully explain Jimpson's presence in the area.
The defense also put a witness on the stand who testified that he had seen Jimpson in the Lindaire Trailer Park near the bank around 10:00 a.m. on the day Linda Grantham was shot. Presumably, this represented an attempt to provide an alibi for Jimpson's presence in the area, although Mrs. Grantham was not shot until 2:00 p.m. In this context, the District Attorney was simply commenting on the unsuccessful effort by the defense to provide an alibi through the testimony of another witness.
The use of the word "they" by the District Attorney appears to be a reference to Jimpson's defense counsel, not Jimpson himself. Jimpson was represented by two attorneys at trial, making use of the word "they" easily explainable. The District Attorney appears to have used the word "they" throughout his closing argument. In sum, although the references by the District Attorney are not "entirely clear," they do not appear to have been improper or impermissible. Jones v. State, 517 So.2d 1295, 1302 (Miss. 1987). As a consequence, this Court holds that this assignment of error should be overruled.

V.

DID THE TRIAL COURT ERR IN ADMITTING EVIDENCE OF AN ADDITIONAL CONVICTION OF THE APPELLANT IN ADDITION TO THOSE SET OUT IN THE INDICTMENT?
In setting up its case against Clem Jimpson for the shooting of Linda Grantham, the District Attorney's office sought the additional assignment of habitual offender status against Jimpson, pursuant to § 99-19-83 of the Miss. Code Ann. (1987 Supp.) which reads as follows:
Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, and where any *992 one (1) of such felonies shall have been a crime of violence shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.
The indictment which charged Jimpson listed two specific felony convictions for the purposes of this statute, one for burglary and larceny and the other for murder. These convictions were properly proven at the sentencing hearing following the trial.
Evidence of a third conviction for assault and battery was also introduced, over the objection of defense counsel. The trial court accepted this evidence for review pursuant to Presley v. State, 474 So.2d 612 (Miss. 1985). It is not clear from the record why the prosecution offered evidence of the third conviction into evidence since Presley is generally relevant for the possible reduction of a disproportionate sentence. Id. at 620. Thus, if anything, Jimpson would be benefitted by a successful Presley review.
Under § 99-19-83, proof of two convictions is sufficient to imprison a defendant for life. The trial judge has no discretion in the sentencing phase; therefore, introduction of a third conviction is largely irrelevant and certainly must be considered harmless error. For this reason, it is the opinion of this Court that this assignment of error is without merit.

VI.

DID THE CUMULATIVE EFFECT OF THE PREVIOUSLY NOTED ERRORS (IF ANY) DEPRIVE JIMPSON OF HIS RIGHT TO A FAIR TRIAL?
Having already concluded that the previous individual assignments of error are without merit, the court has considered their collective effect and concludes that this assignment too must fail. This Court is satisfied after examining the record and each assignment of error in exhaustive fashion that Clim Jimpson received a fundamentally fair trial under the United States and Mississippi Constitutions.
The conviction of Clim Jimpson is affirmed by this Court, together with his sentence of life imprisonment without probation or parole as a recidivist.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.