757 So.2d 357 (2000)
Steven HEATHERLY a/k/a Steven R. Heatherly, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-KA-00464-COA.
Court of Appeals of Mississippi.
April 18, 2000.
*358 David O. Bell, Oxford, Attorney for Appellant.
Office of the Attorney General by W. Glenn Watts, Attorney for Appellee.
BEFORE SOUTHWICK, P.J., LEE, AND MOORE, JJ.
MOORE, J., for the Court:
¶ 1. Appellant Steven Heatherly was indicted for selling 34.36 grams of marijuana to Mike Reed, an undercover agent for the Mississippi Bureau of Narcotics. After a trial in the Lafayette County Circuit Court the jury found Heatherly guilty, and the trial judge sentenced him to twenty years imprisonment in the custody and control of the Mississippi Department of Corrections. Aggrieved, Heatherly cites one error on appeal

WHETHER THE TRIAL COURT ERRED IN NOT GRANTING A MISTRIAL BECAUSE OF THE PROSECUTION'S IMPROPERLY COMMENTING ON THE FACT THAT THE DEFENDANT DID NOT TESTIFY AT HIS TRIAL.
Finding no error, we affirm.

I. FACTS
¶ 2. May 29, 1997, Mike Reed, field agent for the Mississippi Bureau of Narcotics (M.B.N.) purchased 34.36 grams of marijuana for $320 from Appellant Steven Heatherly. Reed was accompanied by a confidential informant (C.I.). M.B.N. case agent Chris Bishop and M.B.N. agent Terry Spillers, provided Reed and the C.I. with backup for the drug buy. Agent Bishop tape-recorded the drug transaction as he received it through a transmitter worn by Reed and added his own contemporaneous comments as he observed the transaction through binoculars.
¶ 3. Reed and the C.I. visited Heatherly in the trailer in which he lived and attempted to purchase two ounces of marijuana. Informed that Heatherly could procure the marijuana, Reed and the C.I. followed Heatherly and his co-defendant Timothy Garrett to a "Handy Andy" store so Heatherly could use a pay telephone to procure the drugs. Heatherly rode with Garrett and Reed and the C.I. followed in a separate vehicle. After Heatherly used the telephone, Reed and the C.I. followed Heatherly and Garrett to a laundromat where a potential source of marijuana was identified. After rejecting the source for various reasons, Reed and the C.I. followed Heatherly and Garrett to a trailer park in which Heatherly's aunt resided. Reed gave. Heatherly $320 cash to procure the marijuana from Heatherly's aunt. Reed, the C.I., and Garrett waited at the trailer park entrance while Heatherly approached his aunt's residence alone. After about thirty minutes, Heatherly returned with the marijuana which he gave to Reed. Bishop and Spillers visually monitored the drug transaction with binoculars and audibly monitored the transaction via the wire transmitter worn by Reed. Heatherly and Garrett were not arrested immediately after the transaction. Reed explained that they continued to investigate Heatherly and Garrett in an attempt to locate their suppliers.
¶ 4. Reed and Bishop identified Heatherly as the seller of the marijuana. They also testified and noted in their reports that Heatherly had a spider web tattoo around his navel. Garrett sported a tattoo of the Grim Reaper. During closing arguments, Heatherly's counsel insinuated that *359 mistakes made by Reed and Bishop in reporting the transaction called into question whether their identification of Heatherly as the man who sold the marijuana was mistaken. Heatherly's counsel specifically argued that Reed and Bishop were confused over the amount of money Bishop gave Reed to purchase the marijuana. Further, there was some confusion whether the pre-buy meeting between Reed, Bishop, Spillers, and the C.I. was at Oxford elementary, middle, or high school.

II. LAW AND ANALYSIS

DID THE TRIAL COURT ERR IN NOT GRANTING A MISTRIAL BECAUSE OF THE PROSECUTION'S IMPROPERLY COMMENTING ON THE FACT THAT THE DEFENDANT DID NOT TESTIFY AT HIS TRIAL?
¶ 5. In responding to Heatherly's innuendo of mistaken identity the prosecutor, in his closing argument, stated: "[Y]ou know it's not like they [Heatherly and Garrett] are somebody who look like everybody else. Because both of them have tattoos and it is just that simple that if there was a mistake in the identification. You know, there is no problem in this case." Later, the prosecutor said: "Both of them have tattoos. There is no problem with i.d. in this case. If there was and we were trying to cover that up they wouldn't have made any notation about these tattoos because that could easily be remedied if that is." At this point, Heatherly's counsel objected and an off-the-record bench conference ensued. After the jury retired to deliberate, Heatherly moved for a mistrial, arguing that the prosecutor's comment was an improper comment on Heatherly's failure to testify.
¶ 6. The Fifth Amendment to the United States Constitution provides that a defendant cannot be compelled to testify against himself in a criminal trial. Art. 3, § 26 of the Mississippi Constitution provides the same protection. A direct comment about a defendant's failure to testify is "strictly prohibited." Jimpson v. State, 532 So.2d 985, 991 (Miss.1988). Comments which are not direct "must necessarily be looked at on a case by case basis." Id. Balanced against an accused's interest in not having the prosecutor comment about his failure to testify "is the rule that attorneys are to be given wide latitude in making their closing arguments." Id. (citing Johnson v. State, 477 So.2d 196, 209 (Miss. 1985)).
¶ 7. The trial judge is in the best position to determine the prejudicial effect of a comment and whether it warrants a mistrial. Alexander v. State, 602 So.2d 1180, 1182 (Miss.1992). The State may comment on a defendant's lack of defense without having such comment construed as improper innuendo and insinuation to the defendant's failure to testify. Hobson v. State, 730 So.2d 20, 28 (Miss.1998); Jimpson, 532 So.2d at 991. In Hobson, the court ruled that the prosecutor's comment regarding the defendant's failure to present any evidence of self-defense was not an improper comment on the defendant's failure to testify. In Jimpson, the court reviewed the following remark made in the prosecutor's closing argument:
Breathing hard just as the police officer that arrested him said he does after he runs and what was he doing running? A mile from the bank at exactly the time the woman got shot when he said he lived out in north Jackson and didn't even know Jackson. Didn't even know the streets, except he had some folks out on Bailey Avenue and where was he arrested? Bailey Avenue. Now what was he doing down there? They haven't bothered to tell you that.
Instead of being an improper comment on the defendant's failure to testify, the Jimpson court held that the above statement was simply a comment on the defendant's failure to put on a successful defense.
¶ 8. In the case sub judice, Heatherly implied that the State mistakenly identified him as the person who sold Reed the marijuana. The prosecutor's comment *360 during closing arguments was a comment on Heatherly's failure to successfully back up the claim of mistaken identity he raised in closing arguments, not a comment on his failure to take the stand in his own defense. Under the above authority, we find that the trial court did not err in overruling Heatherly's motion for a mistrial and we hereby affirm.
¶ 9. THE JUDGMENT OF THE LAFAYETTE COUNTY CIRCUIT COURT OF CONVICTION FOR SELLING 34.36 GRAMS OF MARIJUANA AND SENTENCE OF TWENTY YEARS IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND TO PAY A FINE OF $25,000 IS HEREBY AFFIRMED. COSTS ARE ASSESSED TO LAFAYETTE COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.