970 So.2d 164 (2006)
Douvell Lamon DAVIS, Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-00918-COA.
Court of Appeals of Mississippi.
December 12, 2006.
Rehearing Denied July 31, 2007.
*166 William R. Labarre, Virginia L. Watkins, attorneys for appellant.
Office of the Attorney General, by W. Glenn Watts, attorney for appellee.
Before MYERS, P.J., GRIFFIS, and BARNES, JJ.
GRIFFIS, J., for the Court.
¶ 1. Douvell Lamon Davis was convicted in the Hinds County Circuit Court of murder. He was sentenced to serve a term of life in the custody of the Mississippi Department of Corrections. Davis appeals and argues that the trial court erred (1) when it failed to require race and gender neutral reasons for the State's peremptory challenges; (2) when it denied a mistrial due to prosecutorial misconduct; (3) when it denied Davis the right to cross-examine a witness about bias; (4) when it denied Davis the right to question a police detective about prior inconsistent statements received from State witnesses; (5) when it permitted a witness to testify to facts not disclosed in discovery; and (6) when it refused a jury instruction on reasonable doubt. We find error and reverse and remand.

FACTS
¶ 2. On May 18, 2001, at or around midnight, in the backyard of 187 Treehaven Street, Jackson, Kenny Williams was shot in the face. With the exception of Davis, *167 those who were present fled on foot. Davis placed Williams in Williams's car and then left.
¶ 3. A few hours later, Williams's car was found abandoned at a Hastee Tastee in Flora. Davis walked and hitchhiked to a Junior Food Mart. From there he walked to his grandmother's house in Greenville. Three days later, he turned himself in to the Greenville police. A nine millimeter gun was found under a dumpster at the Junior Food Mart in Yazoo City. Williams's body was discovered in early July, in woods off of Presto Lane, near Interstate 55 in Jackson.
¶ 4. Davis gave a statement to the police. He said on the night of Williams's murder, Davis was coming around the left side of the house "and I noticed some people talking." He heard one gunshot in the backyard and two in the front. "The people started going around the front on the right side of the house." Williams was lying shot on the ground. He was not dead, but he could not move. Davis put Williams in the front passenger seat of Williams's car. Davis saw people run after them, and he became afraid. He ran out of gas near Ellis Avenue. He walked to get gas, and when he returned, Williams was no longer in the car. He drove to Flora until he ran out of gas again. He then walked and hitchhiked his way to Greenville.
¶ 5. At trial, Anthony Barber testified that he saw Davis shoot Williams. Antonio Ratliff testified that Davis reached under his shirt for something and then a few seconds later, Ratliff heard a gunshot. Both witnesses' testimonies conflicted with prior statements given to police.

ANALYSIS
I. Was Davis entitled to cross-examine Antonio Ratliff about his motivation for testifying?
¶ 6. Davis complains that he was prevented from questioning Ratliff about possible bias. In particular, he wanted to ask what were Ratliff's perceptions about the district attorney's power to reduce or dismiss pending drug charges. The trial court held that the questions were too speculative to come in to evidence.
¶ 7. "For the purpose of attacking the credibility of a witness, evidence of bias, prejudice, or interest of the witness for or against any party to the case is admissible." M.R.E. 616. Wide-open cross-examination of any matter bearing upon the credibility of the witness is allowed, including the possible interest, bias or prejudice of the witness. Meeks v. State, 604 So.2d 748, 755 (Miss.1992). This includes interrogation about the witness's belief or perception as to whether the State could extend leniency for pending charges. Foster v. State, 508 So.2d 1111, 1114-15 (Miss.1987) (overruled on other grounds); Hall v. State, 476 So.2d 26, 28 (Miss.1985). "Not only is this right secured by our rules of evidence . . . it is a function of the confrontation clauses of federal and state constitutions." Caston v. State, 823 So.2d 473, 491(¶ 50) (Miss.2002). "This right, which is the cornerstone of American justice, was designed `not merely to insure punishment to the guilty, but to insure protection to the innocent, [for without it] every one would hold his liberty at the mercy of the government.'" Foster, 508 So.2d at 1114 (quoting Beckwith v. Bean, 98 U.S. 266, 297, 25 L.Ed. 124 (1879)). To deny a defendant the right to fully cross-examine a witness on the issue of credibility is to deny the defendant his federal and state constitutional rights of confrontation. Young v. State, 731 So.2d 1145, 1151(¶ 40) (Miss.1999). It is therefore reversible error. Hall, 476 So.2d at 28.
¶ 8. At trial, Ratliff testified for the State. In direct examination, he testified *168 that he was in federal prison on drug charges and had a pending state charge in Hinds County for possession of cocaine. In a series of leading questions,[1] the prosecutor asked Ratliff whether she offered him a deal on his state charges in exchange for his testimony. He said no. She then asked whether she told him that she was not there to offer him a deal and just wanted him to tell the truth. He said yes. Ratliff then gave an account which completely contradicted the statement he had given police. He told police he was not an eyewitness, and he told the jury he was. The examination ended as follows:
Q. Okay. After you testify today are you going back to [federal prison in] Yazoo City?
A. Yes, ma'am.
Q. You're hoping to; right?
A. Yes, ma'am.
Q. You don't really like the Hinds County Detention Center, do you?
A. No ma'am. I'm ready to go right now.
Q. The federal prison is a little bit better, isn't it?
A. Yes, ma'am.
¶ 9. On cross-examination, Davis's attorney asked if Ratliff would prefer federal time to state time. He said, "[T]hat's what it looks like." Then counsel for Davis asked, "And these people sitting over here, they've got the power to keep you from having to do state time, don't they[?]" The prosecutor objected and argued that there was no proof that she offered Ratliff leniency for his testimony. She adamantly maintained that Davis was not allowed to ask what any other prosecutor but herself was going to do about Ratliff's charges. She objected to any such "insinuation." The jury was excused. Defense counsel and the prosecutor argued over whether she hid Ratliff's pending charges from Davis in the first place. Davis maintained that he had a right to ask any question about bias and that the State had opened the door to the issue. The judge sustained the objection and reasoned, "You're asking the jury to speculate. Nothing may ever happen. . . . Either a deal has been made with him, or a promise of some type, and there's no proof of that at this point." The trial court further limited the cross-examination to only what the prosecutor Rebecca Wooten Mansell insinuated about leniency and reasoned that it was "extremely unfair to the prosecution to inject that into the case." When the jury returned, the judge instructed them to disregard defense counsel's question.
¶ 10. Before the jury returned, Davis had made the following offer of proof:
Q. Mr. Ratliff, do you have a present pending felony charge here in Hinds County?
A. Yes, sir.
Q. Are you hoping at least to avoid having to serve state time on that charge?
A. I got a lawyer on that charge.
Q. I understand that you have a lawyer, but are you hoping to avoid serving time in the state penitentiary system on that charge?
A. Am I what now?
Q. Are you hoping not to have to serve time on that charge?
A. Well, the charges, my lawyer is trying to get it ran concurrent.

*169 Q. I understand. Are you hoping not to serve that time in the state system? Is that what you hope works out, that you don't have to serve a lot of more time on that case?
A. Yes.
Q. And is the District Attorney for Hinds County, that office, the office that is prosecuting you in that case?
A. Yes, sir.
Q. Okay. And are they the office that has the power to make that time or offer you a concurrent sentence?
A. Yes.
Q. And are they actually the office who could even have the power not to prosecute on that case?
A. Yes.
¶ 11. The proffer shows that not only did Ratliff believe that the prosecutor's office had the power to offer him leniency, but in fact his lawyer was working on it. This was permissible evidence of bias and interest, which Davis was entitled to show. Davis brought up the fact that Ratliff's testimony at trial differed from his statement to police. Ratliff testified that it was because the police's questions were not specific enough. Without testimony about his beliefs of leniency, the jury was unable to consider if the change was because he hoped to ingratiate himself to the Hinds County District Attorney's Office. All the jury had was a false impression that Ratliff knew he was not going to get leniency from the State. The prosecutor further capitalized on this handicap, telling the jury during closing that Ratliff was Davis's friend and would have no reason to lie against Davis. We find that the judge erred in excluding this line of questioning. Davis was denied his constitutional right to confront a key eyewitness against him.
¶ 12. The State responds only that speculative and irrelevant testimony may not come in. The State offers no legal authority that this line of questioning was in fact too speculative or may be excluded. Indeed, the authority is to the contrary, and it requires that Davis be given the right to confront an adverse witness about any hopes of leniency he may have.
¶ 13. Accordingly, we reverse and remand for a new trial consistent with this opinion. We now address the remaining issues that are also reversible or that are likely to appear again on remand.
II. Does a State discovery violation warrant a new trial?
¶ 14. Because we reverse and remand this case for a new trial, we do not reach this issue. Any concern about evidence introduced, which was not disclosed in discovery, will not appear again on remand.
III. Did prosecutorial misconduct warrant a mistrial?
¶ 15. Because this is the third case at this Court in less than a year alleging prosecutorial misconduct against the same district attorney's office, we will address this issue.[2] Davis sets out several claims of prosecutorial misconduct and argues he was entitled to a mistrial due to these errors. The State says there was no misconduct, but if there was, there was no prejudice. Since we have already reversed the case and remanded for new trial, it is not necessary that we determine whether the misconduct prejudiced the defendant. Our analysis is provided to assist the trial court on retrial.
*170 ¶ 16. The standard of review for denial of a motion for mistrial is abuse of discretion. Caston v. State, 823 So.2d 473, 492(¶ 54) (Miss.2002). "A mistrial is reserved for those instances where the trial court cannot take any action which would correct improper occurrences. . . ." Easter v. State, 878 So.2d 10, 21(¶ 34) (Miss.2004). "[W]here appellant cites numerous instances of improper and prejudicial conduct by the prosecutor, this Court has not been constrained from considering the merits of the alleged prejudice by the fact that objections were made and sustained, or that no objections were made." Smith v. State, 457 So.2d 327, 333-34 (Miss.1984).
A. Improper opening and closing arguments
¶ 17. Davis first complains of thirteen instances of improper comments made in opening and closing arguments. Two comments in the opening statement were arguing incompetent evidence that would not be allowed. One comment was about the absence of a witness equally available to both sides. The final comment in opening discussed Davis's right to remain silent. In the closing argument, there were six objections. Davis claims that it was improper when the prosecutor told the jury if they voted not guilty that would be letting the defendant go free. Several comments in closing discussed Davis's right to remain silent or were attempts to shift the burden of proof onto Davis. Two comments were personal attacks on defense counsel, suggesting that he was hiding evidence. Another comment compared Davis's case to other criminal cases. Finally, the prosecutor stated that the jury could only vote not guilty if it believed Davis and disbelieved every other piece of evidence.
¶ 18. Davis contends that the comments on his right to remain silent and the personal attacks on the integrity of defense counsel were enough each by themselves to warrant a mistrial. As for the remaining comments, Davis maintains that the cumulative effect of these errors was prejudicial and warrants a mistrial.
¶ 19. The standard of review that appellate courts must apply to lawyer misconduct during opening statements or closing arguments is whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by that prejudice. Caston, 823 So.2d at 495(¶ 71). During closing, a lawyer is entitled to argue her case, drawing all rational inferences which come from the evidence presented in the courtroom. Id. at 495-96(¶ 72). Attorneys are allowed wide latitude in arguing cases to the jury; however, prosecutors are not permitted to use tactics which are inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury. Sheppard v. State, 777 So.2d 659, 661(¶ 7) (Miss.2000). Furthermore, in closing, counsel "cannot . . . state facts which are not in evidence, and which the court does not judicially know, in aid of his evidence. Neither can he appeal to the prejudice of men by injecting prejudices not contained in some source of the evidence." Id.

1. Comments on Davis's right to remain silent
¶ 20. First, we deal with the comments on Davis's exercise of his right to remain silent. The right not to testify against one's self is secured by the Fifth Amendment to the United States Constitution as well as in Article 3, section 26 of the Mississippi Constitution. This includes the right not to have the State comment on the exercise of this right. Whigham v. State, 611 So.2d 988, 995 (Miss.1992). "The right would be eviscerated if the government were free to make *171 invidious reference when an accused chose not to testify." Id. The prosecutor is prohibited from making both direct comments and those "which could be reasonably construed by a jury as a comment on the defendant's failure to testify." Griffin v. State, 557 So.2d 542, 556 (Miss.1990). "[O]nce such improper comments are made the defendant is entitled to a mistrial. The error is incurable." Livingston v. State, 525 So.2d 1300, 1307 (Miss.1988). This is regardless of the overwhelming weight of the evidence. Id. at 1306.
¶ 21. For example, in Whigham, it was reversible error for the prosecutor to comment that the State's witnesses were unrebutted and unopposed, where the only one who could have rebutted the witnesses was the defendant. Whigham, 611 So.2d at 996. Such comments were the equivalent of telling the jury, "Look, if [the State's eyewitnesses] were not telling you the truth, [the defendant] would have taken this witness stand and denied it." Id.
¶ 22. In Griffin, it was reversible error for the prosecutor to state, "There is one person who can tell you what happened and we have . . . a statement from him. We have a confession, an oral confession, a written confession, yes we do." Griffin, 557 So.2d at 552. The court construed this as a comment on the defendant's failure to take the stand and refute his previous confession. Id.
¶ 23. During opening statements in the case sub judice, the prosecutor stated, "[t]he interesting thing is once Douvell, he finally turns himself in to his grandmother, and he gives a big picture of where all he's been. And then the thing that he forgets to tell you is he gets himself on I-55-." Davis objected, and the trial court sustained the objection. Arguing about what Davis "forgot" to say was an impermissible comment on his right to remain silent. It could reasonably be construed by a jury as a comment on Davis's exercise of his right not to testify.
¶ 24. During closing, the prosecutor stated:
Now Mr. Fortner [Davis's attorney] told you in opening that he was going to be able to show you, the evidence is going to show you that Douvell Davis was trying to help his friend, Kenny Williams, and take him to the hospital.
Well, I'm going to ask you. I want you to read the statement of Douvell Davis. You're going to have this back there. Where does it say anywhere that he was going to the hospital[?] What evidence have you heard any person say that Douvell Davis was taking Kenny Williams to the hospital[?] It's not there. That's not evidence.
You have received absolutely no evidence that Kenny Williams was doing nothing
[Davis objected and moved for mistrial. The court overruled the objection and denied mistrial].
BY MS. MANSELL: Look at the statement. There has been absolutely no evidence presented in this case, no person ever has stated that Douvell Davis, nor did Douvell Davis state in his statement
[Davis again objected and moved for mistrial. The court overruled the objection and denied the motion.]
BY MS. MANSELL: I'm going to keep going. I want you to know what the evidence is. You sat here and heard it. No person ever, and Douvell Davis never says he is going to the hospital. It does not say that.
[Davis objects for a third time and moves for mistrial. The court overrules and denies same.]
. . . .

*172 BY MS. MANSELL: And what's interesting, what's consistent with Antonio Ratliff and Anthony Butler [sic] is that I asked them specifically, was there anybody else around Douvell and Kenny Williams. Was there anybody else around[?]And why that's important is because Douvell talked about some unknown men that were there.
[Davis objects and moves for mistrial. Trial court denies and overrules same.]
BY MS. MANSELL: Douvell Davis talks about some men being there. Do you know who they were[?] Doesn't give any names. But some men being there. And that's why I asked Antonio Ratliff and Anthony Butler [sic], who was beside Douvell and Kenny when the shooting occurred. Nobody.
¶ 25. When the evidence includes a statement made by the accused to law enforcement but the accused does not testify in his own defense at trial, the prosecution and the defense counsel must walk a tight rope. The earlier statement is evidence, but the accused retains his right to remain silent. We will look at these comments separately.
¶ 26. The comments on the unknown men were a direct comment on Davis's exercise of his right to remain silent. The prosecutor said that Davis failed to respond to a question about who the men were. There was absolutely no evidence that Davis was ever asked such a question in the first place, much less that he refused to answer it. This comment was error.
¶ 27. The argument about the hospital was also a comment on Davis's right not to testify. Once again, the prosecutor complains about what Davis does not say. The implication is clear: "If Davis really was innocent, why did he not take the stand and say so? If he had no ill motive in moving Williams's body, he would have explained it." The issue was whether Davis intended to help Williams or intended to hide him. The only one who could possibly testify to that is Davis. Therefore, just as in Whigham, we have a situation where the prosecutor commented on the lack of evidence on an issue where the only one who could have established that issue was the defendant. Whigham, 611 So.2d at 996. This was an impermissible comment on his failure to take the stand and testify to elaborate on his intent to help Williams. This can be the only reasonable assessment of this statement, because whether or not Davis ever took Williams to a hospital was never an issue.
¶ 28. The State maintains that Davis opened the door to the hospital comments. Our supreme court has declined to extend the invited error doctrine to comments on the accused's right not to testify. Livingston, 525 So.2d at 1306; West v. State, 485 So.2d 681, 688 (Miss.1985).
¶ 29. However, the United States Supreme Court held that a defendant invites a "fair response" from the prosecutor on the exercise of the defendant's right to remain silent where defense counsel complains that his client was not allowed to tell his side of the story. United States v. Robinson, 485 U.S. 25, 34, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988).
¶ 30. During opening statement, defense counsel stated, "[Davis] . . . drives [Williams] away trying to help. That's his idea. . . . . He's panicked. Smart or not, stupid or not, immature or not, he drives away, doesn't go to a hospital. . . ." Certainly, defense counsel should be vigilant to protect his client's Fifth Amendment right. However, even if we were to extend the invited error doctrine to this type of misconduct, this statement did not invite *173 the prosecutor's remarks. This was not a complaint that Davis has not been allowed to tell his side of the story. This is not even a passing reference to Davis's silence. It was a claim that Davis was trying to help Williams. The only type of response it could legitimately be said to invite would be reference to competent evidence that negates any such intent. For example, the prosecutor could have pointed to the undisputed facts that Davis did not take Williams to a hospital, and Davis and Williams were near one hospital. She also could have argued, according to the State's version, that Davis and Williams passed several hospitals that night without stopping. The prosecutor chose instead to continue her theme of commenting on Davis's failure to testify.
¶ 31. We hold that it was error to allow the prosecutor to comment on Davis's privilege against self-incrimination.
2. Personal attacks on defense counsel
¶ 32. We next examine the personal comments on defense counsel. The prosecutor made two comments during closing, suggesting that defense counsel was hiding evidence. The first comment was, "And you know, as much as Mr. Fortner didn't want to put his client in Yazoo City." Davis objected, and the trial court sustained. Davis moved for a mistrial, and the court denied it but told the jury to disregard the statement. The second comment was, "[t]he truth is that when Tonia Williams went back to talk to Douvell Davis, what did she tell you[?] This is the question that Mr. Fortner asked. He answered all your questions, didn't he[?] All of them but one. Mr. Fortner didn't ask her what that question was." Davis objected and moved for a mistrial. The court sustained the objection as a personal attack, denied the mistrial, and told the jury to disregard the statement.
¶ 33. Rule 3.02 of the Uniform Rules of Circuit and County Court provides, in part:
Attorneys should manifest an attitude of professional respect toward . . . the opposing attorney. . . . In the courtroom, attorneys should not engage in behavior or tactics purposely calculated to irritate or annoy the opposing attorney. . . . In opening statements, and in closing arguments, the attorneys may not attack the opposing attorney. . . . It is the duty of the court to enforce this rule of its own motion and without objection being made, but the court's failure to do so, where there is no objection made, will not constitute a ground for exception.
"Any person embraced within these rules who violates the provisions hereof may be subjected to sanctions, contempt proceedings or other disciplinary actions imposed or initiated by the court." URCCC 1.03.
¶ 34. The court has held it is reversible error to make unwarranted personal comments on defense counsel in closing argument as to his veracity and believability. Edwards v. State, 737 So.2d 275, 300-01(¶ 56) (Miss.1999). In Edwards, the comments at issue were:
"But, instead, ladies and gentlemen, he made an argument that quite honestly, I don't have any sympathy as I thought I would for him, because I can't believe that anybody could get up here with a straight face and argue to you the things that he has just argued. . . .
Quite honestly, ladies and gentlemen, it boggles my mind as to how anybody could argue such a ridiculous proposition, other than the fact I realize they have a job to do and they have to come up with something. But it is still mind boggling how anybody can stand here with a straight face in front of you and say we haven't proven that. . . .

*174 Now, that does tee me off, ladies and gentlemen, for the defense lawyer, the man who is representing the man who made those maggots infest that man's head, that man over there is defending the dignity of [the victim] by telling you that the photographs that show the bullet holes in his head don't show something important in this case?"
Id. at 300(¶ 54).
¶ 35. Here, Davis argues on appeal that Prosecutor Mansell's comments also attacked defense counsel's veracity and went further, suggesting that he was deceiving the jury. Davis complains that her first comment suggested that the defense attorney knew Davis was in Yazoo City and was trying to hide that. Next, he contends that her second comment, read in context with the rest of the trial, suggested that defense counsel was trying to hide Davis's silence and tears from the jury. We do not read these comments to attack the personal character or integrity of defense counsel. We do not find these to rise to the level of the prohibited comments in Edwards. However, if the State wants the jury to conclude that Davis was in Yazoo City, then the State should argue the evidence that indicates Davis was in Yazoo City. If the State wants to discuss Detective Williams's testimony, it should stick to the evidence. What counsel opposite asks or does not ask is not evidence.

3. Cumulative error
¶ 36. Because we find reversible error elsewhere in the prosecutor's opening and closing arguments, we do not reach the issue of cumulative error.
B. Question based on facts not in evidence
¶ 37. Finally, Davis argues that the prosecutor engaged in misconduct by implying the existence of facts not in evidence. Particularly, she asked Yazoo City Police Chief Michael Wallace if he found the gun at the Junior Food Mart, where Davis had been dropped off. One of the issues in the trial was whether Davis had been to the Junior Food Mart in Yazoo City, where the gun was found. Davis only admitted being at a Junior Food Mart.
¶ 38. The State maintains that Davis did not move for a mistrial on this point. The State further claims that there was other evidence which linked the gun to Davis.
¶ 39. Wallace testified that the gun had been found underneath a dumpster at the Junior Food Mart in Yazoo City. The State asked:
Q. Now, once you learned that a weapon had been recovered at the same [sic] where Douvell Davis had been dropped off, what did you do with that information?
BY MR. FORTNER: We're going to have to object, Your Honor, and ask to approach the bench at this time, please.
BY MS. MANSELL: Your Honor, it wasn't an improper question.
BY MR. FORTNER: We'd like to approach the bench, Judge.
BY THE COURT: All right.
BY MR. FORTNER: Thank you.
(BENCH CONFERENCE)
BY THE COURT: All right. The objection of the defendant is sustained, and the jury will disregard the last question.
A motion for mistrial was made outside the presence of the jury on this basis of this question. The court denied the mistrial.
¶ 40. It is error for the prosecutor to ask questions with no evidentiary basis. Lester v. State, 692 So.2d 755, 781 (Miss.1997) (overruled on other grounds); Hosford v. State, 525 So.2d 789, 792 (Miss. 1988). Either the State could or could not *175 prove that Davis was at the same Junior Food Mart. Asking the question in such a way to insinuate the fact was in evidence was not the alternative. The trial judge properly handled this issue. We caution the State on remand not to repeat this defect.
C. Display of Davis's statement before jury
¶ 41. Because we send this case back for a new trial, we decline to address this issue.
IV. Was Davis entitled to prove the existence of Ratliff and Barber's prior inconsistent statements through Detective Williams?
¶ 42. Davis complains of another limitation of his right to cross-examine adverse witnesses. He maintains it was error for the trial court to deny him the right to introduce, through Detective Williams, extrinsic evidence of Barber and Ratliff's prior inconsistent statements. The State responds that the issue was waived for lack of proffer, is harmless error, and it is unfair to offer extrinsic evidence of a prior inconsistent statement after that witness has already testified.
¶ 43. "The standard of review regarding the admission or exclusion of evidence is abuse of discretion." Yoste v. Wal-Mart Stores, Inc., 822 So.2d 935, 936(¶ 7) (Miss.2002). Unsworn prior inconsistent statements may be used to impeach a witness's credibility. M.R.E. 613(b). Rule of Evidence 613(b) provides:
Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 801(d)(2).
¶ 44. Here, Barber and Ratliff were key eyewitnesses for the State. Davis wanted to introduce evidence that their testimonies differed in important respects from their statements given to police. For example, Ratliff testified on the stand that he saw Davis reach under his shirt for something and then seconds later, Ratliff heard a shot. He also testified that Davis and Williams were arguing just before the shooting. In his statement to police, however, Ratliff said he had already left the scene before the gunshot and did not know who shot whom. He also stated to police that there was no argument between Davis and Williams. Barber testified that Davis was angry over a gun that Williams stole from him earlier that day and said, "That man thinks he stole something from me. Ain't nobody steal from Douvell. I'm going to get me another gun." This, Barber interpreted as a threat, which he relayed to Williams. In Barber's statement to police, he denied there was any argument between Davis and Williams and said Davis had no reason to be angry with Williams.
¶ 45. During cross-examination, Davis confronted both witnesses with these inconsistencies. Ratliff acknowledged the inconsistencies and explained the reason he left the details out of his police statement was because he was not asked specific enough questions, and he did not really want to be involved. Barber, too, acknowledged the inconsistencies. He explained he still did not consider that there was any argument between Davis and Williams, because no angry words were exchanged between the two. Rather, they were relayed solely to Barber.
¶ 46. Davis then attempted to introduce the prior inconsistent police statements *176 through Detective Williams, who took down the statements. The State objected, because she had never heard of allowing one witness to testify to another's inconsistent statement. We direct the State's attention to Hall v. State, 691 So.2d 415, 420 (Miss.1997) (holding mother of victim could testify to victim's prior inconsistent statement). The judge sustained the objection, because Barber and Ratliff were not given the opportunity to explain or deny the statements. As set out previously, Davis gave both witnesses this opportunity. The State argues on appeal that Davis failed to make a proffer on this point. Again, the record is to the contrary. Davis proffered both statements into the record and had them marked for identification as Exhibit 45.
¶ 47. Nevertheless, Davis's claim fails, because both Barber and Ratliff admitted making the prior inconsistent statements. Once a witness explains a prior inconsistent statement by admitting it, extrinsic evidence of the statement cannot be admitted into evidence. Shelton v. State, 728 So.2d 105, 115(¶ 47) (Miss.Ct.App. 1998). This issue has no merit.
V. Should the trial court have allowed Instruction D-5?
¶ 48. Davis claims that the court erred in refusing Instruction D-5 on reasonable doubt. The court refused this jury instruction as an impermissible attempt to define "reasonable doubt," and because there were already two other reasonable doubt instructions.
¶ 49. In reviewing the granting or refusal of a jury instruction, we read all the jury instructions actually given as a whole. Whitten v. Cox, 799 So.2d 1, 16(¶ 39) (Miss.2000). If they fairly announce the law and create no injustice, no reversible error will be found. Id.
¶ 50. We find that reasonable doubt was covered elsewhere by Instructions C-3, S-1, and D-4. This issue has no merit.
VI. Was the State required to provide race and gender neutral reasons for its peremptory strikes?
¶ 51. Because we reverse and remand this case for a new trial, we do not reach this issue.
¶ 52. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS REVERSED AND REMANDED FOR A NEW TRIAL. ALL COSTS OF APPEAL ARE ASSESSED TO HINDS COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, BARNES, AND ISHEE, JJ., CONCUR. SOUTHWICK AND CHANDLER, JJ., CONCUR IN RESULT ONLY. ROBERTS, J., CONCURS IN PART AND SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY LEE, P.J. AND SOUTHWICK, J.
ROBERTS, J., Specially Concurring:
¶ 53. I concur in the majority's decision to reverse Davis's conviction due to an impermissible restraint on Davis's right to a full cross-examination of Ratcliff to explore any possible motive Ratcliff may have had to testify favorably for the State and inconsistent with his own prior statement. I write separately to express my opinion on the majority's analysis of the prosecutor's opening and closing argument as it relates to prohibited comments on Davis's failure to testify. The majority concludes the comments gave rise to reversible error. With utmost respect, I see the issue through a different lens.
¶ 54. This case clearly illustrates what the majority recognizes as a fine line or "walking a tight rope" on what is and what *177 is not a prejudicial comment on Davis's right to refrain from testifying. This delicate situation exists for two reasons: (a) Davis did not testify live at trial and (b) Davis gave a statement that can be considered both incriminating in part and exculpatory in part. What Davis said and, conversely, what Davis did not say in that statement is evidence before the jury subject to fair comment by the prosecution.
¶ 55. During opening statements, Davis's attorney claimed that Davis was walking towards his house when he heard gunshots and saw "people running away." Davis's attorney went on to state that Davis found Williams laying on the ground bleeding from a gunshot wound to the head, that Davis put Williams in Williams's Cadillac, and that Davis drove Williams "trying to get help." Davis's attorney even mentioned that Davis did not go to a hospital. As the majority notes, Davis claimed that he was trying to get help for Williams. That is, Davis presented a defense based on the concept that he had only the best intentions in driving Williams. Davis argued that he did not shoot Williams. Davis claimed that he put Williams's injured body in his car to get "help" for Williams. Naturally, one way for Davis to have helped Williams would have been to get Williams to a hospital for medical attention.
¶ 56. Without question, the prosecution's comments were not direct references to Davis's failure to testify. The prosecution did not specifically say something along the lines of, "Davis did not take the witness stand and defend himself against these allegations." Where the comment is not a direct reference to a defendant's decision to refrain from testifying, we must examine the comment on a case by case basis. Jones v. State, 669 So.2d 1383, 1390 (Miss.1995).
¶ 57. "[A]ttorneys are to be given wide latitude in making their closing arguments." Jimpson v. State, 532 So.2d 985, 991 (Miss.1988). Many comments by prosecutors have been examined as potential comments on a defendant's failure to testify and have been found to be permissible  usually based on the concept that the prosecution may comment on a defendant's failure to set forth a successful defense. Jimpson, 532 So.2d at 991. Such a comment is not a reference to a defendant's failure to testify by "innuendo and insinuation." Alexander v. State, 610 So.2d 320, 340 (Miss.1992).
¶ 58. In its purest form, this contingent of permissible comments shows that the prosecution may comment to show a lack of evidence in the record to support the argument of the defendant's attorney. Dowbak v. State, 666 So.2d 1377, 1387 (Miss.1996). Accordingly, the prosecution may question a defendant's inability to explain his presence in the vicinity of a crime. Jimpson, 532 So.2d at 991. The prosecution may comment on a defendant's actions on the night of a crime, including comments as to what a defendant did or did not say to a highway patrolman. Jones, 669 So.2d at 1390 (emphasis added). The prosecution may turn the jury's attention to a defendant's statement to authorities and the defendant's confession within that statement. Foster v. State, 639 So.2d 1263, 1290 (Miss.1994). Similarly, the prosecution may comment on a defendant's failure to successfully back up his claim of mistaken identity. Heatherly v. State, 757 So.2d 357(¶ 8) (Miss.Ct.App.2000). Along the same lines, I would hold that, so long as it does so within the confines of the evidence, the prosecution may question a defendant's inability to explain his behavior where it is inconsistent with his defense. In other words, the prosecution is allowed to properly evaluate the weight *178 and worth of the evidence. Taylor v. State, 672 So.2d 1246, 1266 (Miss.1996).
¶ 59. Viewing the comments in context, I am convinced that the prosecutor's statements were not impermissible comments on Davis's failure to testify. I see the prosecutor's comments as evaluations of the weight and worth of the evidence and references to Davis's failure to put forth a rational and believable defense. Davis claimed he was not guilty of murder. By his statement, submitted into evidence, Davis also attempted to explain William's presence in the car. In essence, Davis submitted that he had Williams's best interests in mind when Davis tried "to help" Williams by driving him somewhere. The prosecution's comments showed that, had Davis really intended "to help" Williams, Davis could certainly have done so by taking Williams to one of many nearby hospitals. I would find that the prosecution's comments related to the evidence and they were permissible comments in response to Davis's arguments. McGilberry v. State, 741 So.2d 894(¶ 35) (Miss.1999).
¶ 60. The majority presents a sound and thorough analysis. However, with all due respect, I collegially disagree with the conclusion that the prosecutor committed error in her arguments. I would find that the prosecution's comments were permissible comments on the inferences and conclusions that the jury was free to draw from the evidence before it, including Davis's statement to the police.
LEE, P.J., AND SOUTHWICK, J., JOIN THIS OPINION.
NOTES
[1] The trial court repeatedly admonished the prosecutor to refrain from leading her own witnesses.
[2] Bailey v. State, 956 So.2d 1016 (Miss.Ct. App.2007); Bailey v. State, 952 So.2d 225 (Miss.Ct.App.2006).