763 So.2d 924 (2000)
Eric MILLS a/k/a Eric Reece Mills, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-KA-00942-COA.
Court of Appeals of Mississippi.
July 25, 2000.
*925 Steven E. Farese, Sr., Ashland, Attorney for Appellant.
Office of the Attorney General by Billy L. Gore, Attorney for Appellee.
BEFORE KING, P.J., PAYNE, AND THOMAS, JJ.
THOMAS, J., for the Court:
¶ 1. Eric Mills appeals his conviction of simple possession of cocaine and possession of marijuana, more than one ounce but less than one kilogram, with the intent to sell, transfer or distribute. Aggrieved, Mills assigns the following issues as error
I. THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S FIRST MOTION IN LIMINE IN ALLOWING THE HEARSAY TESTIMONY OF HIS FOUR YEAR OLD SON UNDER THE PRESENT SENSE IMPRESSION EXCEPTION.
II. THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION FOR MISTRIAL AFTER AGENT STEVEN RAY VIOLATED THE APPELLANT'S THIRD MOTION IN LIMINE GRANTED BY THE TRIAL COURT.
III. THE TRIAL COURT ERRED IN ALLOWING THE INTRODUCTION OF A RECEIPT, OVER THE OBJECTION OF THE APPELLANT, WHEN SAID RECEIPT WAS NEVER PROVIDED TO THE APPELLANT PRIOR TO THE TRIAL.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. On February 9, 1998, investigators from the Alcorn County Narcotics division arrived at Eric Mills's home to serve him with a capias for an unrelated charge of possession of a controlled substance. As they were arresting Eric Mills, his wife and children were present and preparing to leave to go to school and work. Mrs. Mills's vehicle had a low tire, and she planned on using a red truck also on the premises.
¶ 4. As the officers were walking Mills to the police car, the officers testified that they found a brown vial commonly used to hold cocaine in Mills's front yard. The officers asked Mrs. Mills for permission to search the premises, which she granted. The children went out to wait in the truck while the officers quickly searched the premises. After the search of the house the officers were walking out to the car with Mrs. Mills where they noticed a plastic baggy containing what appeared to be marijuana lying on the ground by the open truck door.
¶ 5. Agent Marc Mills, a narcotics investigator with the Alcorn County Sheriffs Department, testified that he picked up the baggy and sarcastically asked a rhetorical question similar to "who does this belong to" or "what is this." Eric Mills's four-year-old son promptly blurted out, "It belongs to my daddy." Agent Mills also *926 testified that after finding the baggy on the ground he found a baggie containing a "white powder substance" on the inside floorboard of the truck, a paper sack inside the truck underneath the front seat containing seven individually wrapped one ounce baggies of what appeared to be marijuana, and a set of weighing scales. The white substance was determined to be 3.15 grams of powder cocaine, and the green leafy substance was determined to be over 200 grams of marijuana.
¶ 6. Agent Steve Ray and Agent Marc Mills testified that while the defendant was at the police station and talking with the agents, but before he knew the agents had found the drugs in the truck, Eric Mills stated that the truck was his. They testified that Eric Mills had told them that he had traded another truck for the truck in question with Jerry Gifford a few months back. Agent Mills testified that later that day he told Eric Mills that drugs had been found in the truck. On February 10th, the next day, Eric Mills indicated on a notice of seizure claim that the truck was not his.
¶ 7. A motion in limine was granted prohibiting any of the State's witnesses from mentioning any other charges pending against Eric Mills and more specifically that law enforcement officers were at Mills's house to arrest him on the charge of possession of a controlled substance with the intent to distribute. The State called Agent Steven Ray, an agent with the Mississippi Bureau of Narcotics at the time of the offense, as their third witness. During direct examination, Agent Ray inadvertently mentioned the offense for which Mills was being arrested. Mills objected and the judge sustained the objection. Mills requested a mistrial which the trial judge refused. The trial judge denied the motion for a mistrial and found that the jury did not hear the response of the officer and that the officer unintentionally violated the order.
¶ 8. The judge also allowed the introduction of an Auto Mart receipt over the objection of the defense. During direct examination of Agent Mills there was no mention made of any receipt. During cross-examination defense counsel began to question Agent Mills about what proof the State had regarding whether the red truck belonged to Eric Mills. The relevant portion of the record reads:
Q. Tell me what items you found in the truck besides the drugs.
A. I found aof course, there were some speakers. I found a receipt in the truck with Mills Auto Zone or Auto Mart in it. It was dated 1/27 of '98 with a state tax ID number. It also hadit was a cash receipt for a part for a lawn mower spark plug.
Q. To who?
A. It was to Mills Auto Mart with a state tax 
Q. And where are those, sir?
A. I believe they are in the case file somewhere.
Q. Thank you. May I see those, please?
A. There was also some tires in the back of the truck, a bunch of garbage, some pamphletsI don't know what was on them. That wasI think there was a shirt, a flannel shirt in the toolbox. There was some tools.
Q. Where are those items?
A. I assume they're in the truck, locked in the truck, or in the truck.
Q. Who belonged to those items?
A. I have no idea.
Mr. Farese: If I can approach the witness, your honor?
The Court: You may.
Q. What is this?
A. This is a cash receipt from Auto Zone.
Q. To whom?
A. It says Mills Auto Mart. It's got a state tax ID number of 02-66or 6778, a tax exempt transaction for a *927 part, a J19LM EZ Start, which is a spark plug for a lawn mower. $2.49
Agent Mills testified that he found the receipt the day before the trial because he went back down to the truck to look for some way to tie the truck to the defendant when he heard the defendant was claiming the truck was not his. During the redirect of Agent Mills the State introduced the receipt into evidence. The defense objected claiming a discovery violation, and the judge allowed the receipt into evidence since the defense opened the door.
¶ 9. The jury convicted Eric Mills of possession of cocaine and possession of more than one ounce of marijuana with intent to sell, transfer or distribute. Circuit Court Judge Barry Ford sentenced Eric Mills to serve a term of three years in the MDOC for simple cocaine possession and fifteen years with five suspended and five years on post-release supervision for marijuana possession with intent to sell. Eric Mills now appeals to this Court.

I. THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S FIRST MOTION IN LIMINE IN ALLOWING THE HEARSAY TESTIMONY OF HIS FOUR-YEAR-OLD SON UNDER THE PRESENT SENSE IMPRESSION EXCEPTION.
¶ 10. During the trial, Agent Marc Mills, a narcotics investigator with the Alcorn County Sheriff's Department, testified that he picked up a baggy found on the ground below the truck door and sarcastically asked a rhetorical question similar to "who does this belong to" or "what is this" and Eric Mills's four-year-old son promptly blurted out, "It belongs to my daddy." Mills argues that this statement was erroneously admitted into evidence because it was a hearsay statement. He further argues that the exception the trial judge relied upon, the present sense impression exception, is not a proper exception since the statement was in response to a question and not a "spontaneous" statement, meaning "happening or arising without apparent external cause; self-generated."
¶ 11. The pertinent Mississippi Rule of Evidence, Rules 803(1) and (2) provide in pertinent part:
(1) Present sense impression. A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition or immediately thereafter.
(2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.
¶ 12. In Evans v. State, 547 So.2d 38, 41 (Miss.1989), the Mississippi Supreme Court stated that to be admissible under this exception, the statement must be spontaneous. The Court went on to explain that the question of spontaneity is to be decided upon the facts and circumstances of each individual case and such a determination is a question for the trial judge whose action in admitting the statement should not be held to be error unless this Court would be justified in concluding that under all and any reasonable interpretation of the facts the explanation could not have been spontaneous. Id.
¶ 13. In Turner v. State, 573 So.2d 1335 (Miss.1990), the Mississippi Supreme Court addressed a similar issue. In Turner, Agent Vaughan testified that the confidential informant had a small car that momentarily obstructed his view of who the CI was talking to so he asked the CI, "who was that?" Id. at 1338. The defense objected to hearsay in allowing Vaughan to state what the CI had told him, and the circuit court overruled the objection. Id. The Supreme Court held that:
[T]he statement at issue is hearsay and that its receipt into evidence may be defended only if it fell within one of our accepted hearsay exceptions. We find such an exception in Rule 803(1), Miss. R.Ev. which provides that hearsay statements of present sense impression are *928 likely to possess sufficient accuracy that they should not be excluded by the hearsay rule.
Present sense impressions are:
... a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition or immediately thereafter.
We have an apparent fit. The statement Cole made described and identified the person Cole was talking to while he was perceiving and talking to this individual. The official comment to Rule 803(1) explains that this exception to the hearsay rule: ... is based on the theory that the contemporaneous occurrence of the event and the statement render it unlikely that the declarant made a deliberate or conscious misrepresentation.
Miss.R.Ev. 803(1). Applied to these circumstances, the idea is that it would be extremely unlikely that one such as Cole, while looking at and talking to Edward Turner, would in answer to the question, "who is that" answer with the name of some other person. Of course, there is always the possibility that Cole may be mistaken in his identification but that is the same human frailty that would be present if Cole himself were appearing at trial and stating that he was talking to E.T. on the afternoon of May 19, 1988. We hold that the statement at issue is admissible within the present sense impression of our hearsay rule.
Id. at 1338 (citations omitted).
¶ 14. The trial court here held that the statement was admissible even though coming from a four-year-old, holding that the child would unlikely respond so quickly by telling a lie and also finding that the child did not talk to anyone nor was he coached before uttering the statement. Thus, the trial court found the child's testimony competent and likewise admissible as a present sense exception to the hearsay rule.
¶ 15. We hold that the situation in Turner is similar to the case at bar, just as it is unlikely that the CI would respond to a question of "who is that" with a name of some other person, it is unlikely that a four-year-old child would respond to a question of "who does this belong to" with an answer other than the truth, as was found by the trial court in determining admissibility. In conformance with Turner, we hold that this statement falls within the present sense impression exception to the hearsay rule. This issue is without merit.

II. THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION FOR MISTRIAL AFTER AGENT STEVEN RAY VIOLATED THE APPELLANT'S THIRD MOTION IN LIMINE GRANTED BY THE TRIAL COURT.
¶ 16. Eric Mills argues that the trial court erred in denying the motion for a mistrial after Agent Ray violated the motion in limine. Agent Ray violated the motion in limine prohibiting any of the witnesses from mentioning any other charges pending against Eric Mills, especially that law enforcement officers were at his home to execute a warrant for his arrest on the charge of possession of a controlled substance with the intent to distribute. During direct Agent Ray stated that they were serving a warrant for sale of a controlled substance. The judge denied the motion for a mistrial, finding that the statement was made inadvertently and the jury did not hear the statement since the judge himself could not hear the statement.
¶ 17. The Supreme Court has repeatedly held that the granting of a motion for a mistrial is within the sound discretion of the trial judge. Hoops v. State, 681 So.2d 521, 528 (Miss.1996); Bass v. State, 597 So.2d 182, 191 (Miss.1992). We are reminded that the trial judge is in the best position to determine whether an objectionable remark has had any prejudicial effect and for that reason the trial court is *929 allowed considerable discretion in determining whether a remark was so prejudicial as to warrant a mistrial. Roundtree v. State, 568 So.2d 1173, 1177 (Miss.1990). "The failure of the court to grant a motion for mistrial will not be overturned on appeal unless the trial court abused its discretion." Bass, 597 So.2d at 191. Each case must be decided individually in determining whether a particular error constitutes reversible error. Henderson v. State, 403 So.2d 139, 140 (Miss.1981). A violation of a motion in limine should not result in the costly and time-consuming penalty of a new trial unless it affirmatively appears from the whole record that a miscarriage of justice has resulted. Id.
¶ 18. In the case at bar, the judge denied the motion for a mistrial and held:
Your objection is noted for the record. And the motion for a mistrial will be overruled. The Court's of the opinion that the jury never heard any of the response of the officer. And for the purposes of this record, I do not think that the officer intentionally violated the order of the Court. I think that it was a response to the question that was asked by the district attorney, that he was caught up in what he was saying, and had no intention. Because I'm of the opinion that the jury did not hear it because I barely heard it and I'm sitting less than four feet away from him and that the jury is approximately 10 to 15 feet away from him. For that reason, the motion for a mistrial will be overruled.
Clearly, the judge is in the best position to determine if the jury heard the statement. The trial judge addressed these issues and held that a mistrial was not necessary, and we thus give deference to the lower court's ruling.

III. THE TRIAL COURT ERRED IN ALLOWING THE INTRODUCTION OF A RECEIPT, OVER THE OBJECTION OF THE APPELLANT, WHEN SAID RECEIPT WAS NEVER PROVIDED TO THE APPELLANT PRIOR TO THE TRIAL.
¶ 19. Mills alleges that the trial court erred in allowing the introduction of a receipt and the error requires a reversal. Mills argues that the receipt was never provided to him prior to trial and constituted a discovery violation and should therefore not have been admitted.
¶ 20. The State, however, argues that they did not discover the receipt until the day before trial and they were only intending to use the receipt in rebuttal, to show that Eric Mills had access to the truck. Furthermore, the State correctly points out that the defendant inquired about the receipt during cross-examination of Agent Mills and asked Agent Mills to produce the receipt. After reading the pertinent part of the record, we find that the State is correct in arguing that Mills first introduced the evidence of the receipt. The general rule is that a defendant cannot complain of the evidence which he himself brings out. Winters v. State, 449 So.2d 766, 771 (Miss.1984); Simpson v. State, 366 So.2d 1085, 1086 (Miss.1979); Stone v. State, 210 Miss. 218, 49 So.2d 263 (1950). Accordingly, Mills waived any objection to the introduction of the receipt. This issue is without merit.
¶ 21. THE JUDGMENT OF THE ALCORN COUNTY CIRCUIT COURT OF CONVICTION ON COUNT I OF POSSESSION OF COCAINE, AND SENTENCE OF THREE (3) YEARS; COUNT II OF POSSESSION OF MORE THAN ONE OUNCE OF MARIJUANA WITH THE INTENT TO SELL, TRANSFER OR DISTRIBUTE AND SENTENCE OF FIFTEEN (15) YEARS, WITH FIVE YEARS SUSPENDED, WITH SENTENCES TO RUN CONCURRENTLY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FINE OF $2,000 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
*930 KING, P.J., BRIDGES, IRVING, LEE, AND PAYNE, JJ., CONCUR. SOUTHWICK, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McMILLIN, C.J. AND MOORE, J. MYERS, J., NOT PARTICIPATING.
SOUTHWICK, J., dissenting.
¶ 22. There are two issues that cause me to write separately. One is that in my view the present sense impression hearsay exception should not have led to the admission of the statement by the defendant's four-year old son. Secondly, I find that the State violated its discovery obligation by not revealing the receipt for a spark plug that linked the defendant to the truck in which contraband was found. I would reverse and remand for further proceedings.
¶ 23. Something of an argument is made that regardless of the present sense impression hearsay exception, the boy's statement was an excited utterance. M.R.E. 803(3). There was no evidence of the child's excitement; thus I find no factual basis for this alternative hearsay rule. The trial judge ruled only on the basis of present sense impression.
¶ 24. I note that the exception that the trial judge somewhat facetiously mentioned is one that he knew was not actually in the rules, that is, "if you want to know the truth, ask a young child." What the trial judge did not do, and we must not either, is let some sense that children are basically honest become a reason to admit what otherwise does not fit a hearsay exception. My concern here ultimately is not the honesty but the reliability of the boy's opinion.

1. Hearsay exceptionpresent sense impression
¶ 25. At a pretrial motion hearing, defense counsel argued that the boy's statement could not be admitted until the youngster himself was declared to be a competent witness. The attorney then explicitly raised the issue that what the boy said must be found to be reliable. Counsel also argued that even if this was a present sense impression, it could not be admitted without undertaking the task of balancing the probative value of the statement against the unfair prejudice.
¶ 26. The threshold question raised by the defendant is whether a hearsay statement from a child can be admitted without determining whether the child is competent to be a witness. I think that is in fact the right issue, but it is the wrong phrasing. An evidentiary rule states that every person with certain enumerated exceptions is competent to be a witness; there is no automatic exclusion because of infancy. M.R.E. 601. However, the presumption of competence can be rebutted by the party objecting to the evidence. The hearsay exception being employed here is usable regardless of whether the witness is available to testify. M.R.E. 803. The relevant analysis under Rule 601 becomes whether the child "so lacks the powers of observation, recordation, recollection, and narration that the testimony is untrustworthy and lacks relevance." WEINSTEIN'S FEDERAL EVIDENCE 601-19 (2000), § 601.04[2][b]. I find that to be the proper approach when a hearsay statement by a child declarant is being consideredwhen all else has been decided, is the statement untrustworthy not because of honesty, but because of the considerations just noted?
¶ 27. I look at the hearsay exception first. The present sense impression exception is a deceptively flexible concept that has a tendency to admit any hearsay statement that describes what has been perceived by one of the senses. M.R.E. 803(1). The "something" in this trial was a police officer's testimony that a four-year boy told him that a particular baggie found on the ground belonged to the boy's father. That find was later proven to be a package of marihuana.
¶ 28. There are two questions here. One is whether the statement is a present sense impression at all. The other is *931 whether it is admissible under rules requiring that evidence be relevant and that its probative value be balanced against unfair prejudice.
¶ 29. The present sense impression rule requires a spontaneous statement. M.R.E. 803(1) cmt. "Spontaneous" means "happening or arising without apparent external cause; self-generated." Am. Heritage Dictionary of the English Language 1741 (3d ed. 1992). In the case law, though, "spontaneous" has come to mean that if a statement is close in time to the perception being described and if there does not appear to have been a reason to fabricate, it will be considered spontaneous. Evans v. State, 547 So.2d 38, 41 (Miss.1989).
¶ 30. In my view, under any reasonable definition of spontaneity, the answers cannot be prompted by the external cause of questions being posed. A present sense impression must be a spontaneous description or explanation of a condition that is made while the declarant was perceiving it, which to me means that the event generates the statement, not a question.
¶ 31. To understand the meaning of this hearsay exception, I seek some perspective. The official commentary to the Rule are to "be used by all courts as authoritative guides to the interpretation of these Rules" according to the Supreme Court order that adopted the Rules. Supreme Court Order of September 24, 1985, reprinted in WEST'S MISSISSIPPI RULES OF COURT, STATE AND FEDERAL 122 (1999). The present sense impression hearsay need not be precisely contemporaneous with the event being described, as "a slight lapse may be permissible. Spontaneity is the essential factor." M.R.E. 803(1) cmt. As the Comment further discusses, this and the next three subsections together replace the "elusive concept of res gestae," a concept that proved beyond logical application. Id. At least one goal in applying these exceptions should be to avoid sliding back into the quagmire of res gestae.
¶ 32. One of the authorities cited in the official comments for understanding the problems with res gestae was a law journal article. Id., citing Kenneth W. Barton & Richard G. Cowart, The Enigma of Hearsay, 49 MISS. L.J. 31 (1978). The authors contrasted the Federal Rules of Evidence exceptions for present sense impression and excited utterance with the old res gestae doctrine. The authors concluded that res gestae "goes beyond the two exceptions" to include "all things closely connected with an act or occurrence." Barton & Cowart, Enigma, 49 MISS. L.J. at 59. Under this old rule, it is "difficult to delineate any specific guidelines of admissibility other than the general res gestae requirement that the statement be so closely connected that it constitutes a part of the occurrence. In meeting this requirement, the key factor is the spontaneity of the statement." Id. at 61 (footnote omitted). Interestingly, that latter phrase is now used to describe the present sense impression rule: "Spontaneity is the essential factor." M.R.E. 803(1) cmt. The focus on spontaneity did not avoid confusion under res gestae but perhaps can under the Rules of Evidence.
¶ 33. In seeking additional perspective, I note that the Federal Rules of Evidence and the Mississippi Rules contain identical statements of the present sense impression hearsay exception and of the related exception for excited utterances. F.R.E. 803(1) & (2); M.R.E. 803(1) & (2) (the only difference is that a comma appears in M.R.E. 803(1) that is missing in F.R.E. 803(1)). Useful commentary appears in the descriptions of the federal evidentiary exceptions. A scholarly and comprehensive explanation of the federal rule provides considerable guidance. Jon R. Waltz, The Present Sense Impression Exception to the Rule Against Hearsay: Origins and Attributes, 66 IOWA L.REV. 869 (1981). The author compares the present sense impression with the one for excited utterances. As he points out, the premise for the latter is that when a declarant is still under the effect of a stressful event, *932 the potential for fabrication is small. Id. at 879-80. As a result, the length of the time gap between the event and the hearsay statement is not overly important if the excitement continues to have its effect. Id. On the other hand, the premise that supports the trustworthiness of a present sense impression is that a statement made while an event is being perceived is so impulsive that it precedes any potential thought of fabrication. Id. at 880. Thus a present sense impression may be either a calm or an excited utterance.
¶ 34. Since the justification for present sense impression "rests so heavily on contemporaneity, that requirement is likely to be enforced with some rigor...." Id. Professor Waltz mentions that when the federal rules were being formed, an exception was proposed for a statement that "narrates, describes, or explains an event or condition recently perceived by the declarant." Id., citing 46 F.R.D. 161, 377 (1969). By permitting a post-event narration and using the word "recently" instead of "immediately," the proposal overly diluted the guarantees of trustworthiness and that exception was rejected. Waltz, Present Sense Impression, 66 IOWA L.REV. at 880 n. 69. The present sense impression exception itself should not be so diluted as to admit the same kind of hearsay.
¶ 35. What these authorities suggest is that careful application of the present sense impression rule is required. If statements are to be introduced without the opportunity to cross-examine the declarant, then the use of the exception must stay faithful to the justification for the exception. The confusion created by the res gestae doctrine in part arose from inconsistencies in determining how contemporaneous to the event a statement needed to be in order to be admissible. Barton & Cowart, Enigma, 49 Miss. L.J. at 62. In order to decide what is the necessary spontaneity, one commentator gave what may not be useful as a precise measure but is helpful as a description:
the statement must be the facts talking through the party, rather than the party talking about the facts. The idea is that what is said is part of the event and is used circumstantially, and, therefore it is not dependent for its force on the veracity of the declarant.
Comment, Spontaneous Exclamations in the Absence of a Startling Event, 46 COLUMBIA L.REV. 430, 438 (1946).
¶ 36. The one case authority in the Mississippi Rule Comments on present sense impression is an excellent example of the facts speaking through the party and not a later narration about the event. Houston Oxygen Co. v. Davis, 139 Tex. 1, 161 S.W.2d 474 (Comm'n App.1942), cited in M.R.E. 803(1) cmt. The Court permitted testimony from a witness who was in one car that when another car passed her about four miles before the traffic accident, a second person in the witness's car said that "they must have been drunk, that we would find them somewhere on the road wrecked if they kept that rate of speed up." Houston Oxygen, 161 S.W.2d at 476. That may also be admissible as an excited utterance. A statement concerning even an unexciting event would be admissible under the present sense impression rule but not under the excited utterance one.
¶ 37. Despite what I read to be a need to be rigorous in the requirement of true spontaneity, the exception has been applied in Mississippi in cases in which questions to a declarant elicited the hearsay statement that was admitted. Turner v. State, 573 So.2d 1335, 1338-39 (Miss.1990). The Supreme Court requires that the statement be spontaneous, but in a general statement says that this "is a question for the trial judge, whose action should not be overturned unless this Court would be justified in concluding that under all and any reasonable interpretation of the facts the exclamation could not have been spontaneous." Clark v. State, 693 So.2d 927, 932 (Miss.1997), quoting Evans, 547 So.2d at 41. Some statements have been admitted *933 that are not contemporaneous with the event and may be closer to a narration of facts of recent events. E.g., Evans v. State, 547 So.2d at 40. Many of these, Evans especially, were also justified under the excited utterance exception. Id. at 41.
¶ 38. Our Supreme Court has never held that a present sense impression statement must be elicited by the event and not by a question. "Spontaneous" seems to mean in these opinions the absence of potential fabrication. As the review just given shows, only if the statement is all but contemporaneous with the event is there justification for concluding that there was no time for fabrication; when the immediacy disappears, so does the justification. The nostrum that it is spontaneous if the circumstances cause the trial judge to find that it was spontaneous stirs much into the mix. Considering the controlling Supreme Court pronouncements, though, I acknowledge that the officer's question does not foreclose the use of Rule 803(1).
¶ 39. The relevant part of the statement in this case concerns ownership. That is not something perceivable strictly by the senses, such as that the object on the ground was large or small, or if the boy had been holding it, was heavy or light. Here, there is a clear mental processing of the information received by the declarant's senses. For an unknown reason the boy stated that the object on the ground belonged to his father. Whatever the reason was, it was not solely from what the boy was perceiving at the time. Instead, it was a combination of what he was seeing and something that occurred earlier. Perhaps he saw his father drop the bag there the night before, or saw him harvesting the crop at a secret patch somewhere and put some in a baggie. On the other hand, perhaps he only knew that his father had recently been near the place where the baggie appeared, or his mother told him that similar objects were his father's.
¶ 40. The central difficulty here is whether a statement of ownership is a description or explanation of something perceived by the senses. To exclude it would mean that sensory impressions must basically be objective ones, things that senses alone would tell anyone with the same ability to hear, see, or smell, but not including any special knowledge by the declarant. To see the effect of that premise, let us assume that instead of seeing the plastic package on the ground, the boy saw someone disappearing into the woods behind the house. If the officer had asked who that was, the boy's response that it was his father is similar in character to the statement about the baggie. Taking what has been seen, the boy processed that information and described what he saw. Taking two other examples mentioned above, namely whether the object was large or small, heavy or light, what the senses perceived must be processed mentally to compare it to something already known by the declarant. The object was large or heavy compared to something in the declarant's experience.
¶ 41. I can find no principled place to draw a line that would differentiate acceptable processing of information by the observer and unacceptable processing. To some extent every present sense description joins what the senses have just perceived with the declarant's prior knowledge and allows an impression to be stated. Thus once it is found under existing case law that the statement could be "spontaneous" even though it was in response to a question, then this statement is a present sense impression despite that the boy clearly also was relying on some prior perceptions.
¶ 42. Yet even when a hearsay exception applies, the information still must be relevant. Relevant evidence is that "having any tendency to make the existence of any fact that is of consequence... more probable" than without the evidence. M.R.E. 401. It is a not enough to conclude that since the ownership of the baggie was relevant that any statement regarding ownership is also relevant. Instead, does the statement make the defendant's actual *934 ownership more probable? To decide that, some information about the reliability of the statement is necessary.
¶ 43. To use the earlier hypothetical, would the boy's statement that it was his father who was disappearing in the woods make that fact more probable? It would depend on whether the circumstances revealed that the boy had a reasonable opportunity to have reached that conclusion. What distance separated the boy and the person; is there any evidence that the boy did not actually see the person but perhaps just saw a flash of color before the person became completely hidden?
¶ 44. These questions evoke recollections of habits of young children. How many times does a young child see an object and reach a conclusion about it that is highly suspect? Examples include seeing another automobile on the highway and saying that it is a grandparent's or another relative's vehicle even though it is only the same color, or honestly claiming a particular object as his or her own when it is only similar.
¶ 45. Here, the boy was recalling some one or more prior events or impressions and translating them into an answer to the officer's question. It should not be forgotten that what was done here was to admit evidence as an exception to the normal rule permitting cross-examination of witnesses. The reason for the various hearsay exceptions is that certain kinds of evidence are inherently reliable. If the boy were on the stand, it would be legitimate for counsel to ask him why he thought the item was his father's. Depending on what he said, the belief might be excluded as being too speculative.
¶ 46. That is not the kind of inquiry that is needed for a generic description of what the senses have perceived. The declarant saw a car going fast. What "fast" means to a young child is a different issue. The inquiry is unnecessary though implicit in other kinds of statements, such as that the declarant saw a specific person running whom he would have reason to recognize. The senses together with obvious knowledge provide the answer. There can be a misperception, but still the whole matter revolves around the perception of that present event coupled with readily accepted prior knowledge. Here we have no idea what the boy was basing his statement upon.
¶ 47. Thus I conclude that the statement was not relevant, as it does not make his father more probably the actual owner of the baggie. Even if the statement does not totally fail the relevance test, I would hold that it fails the balancing one that the prejudice cannot outweigh the probative value of the evidence. M.R.E. 403. That is the final filter through which all evidence must pass before being admitted before the jury. I find that it did not succeed in doing so.

2. Discovery violation
¶ 48. The next issue that I find to require reversal is the State's failure to disclose that it had a receipt found in the vehicle that linked the vehicle to Mills. Whether the truck was Mills' was a critical issue; the receipt was some of the strongest evidence.
¶ 49. First the State argues that they were saving the receipt for rebuttal. The State does not have the right to reserve for rebuttal some of its strongest evidence directly on the burden of proving the elements of the crime, and thereby fail to disclose it to the defense. Whatever valid points the defense made as to the weakness of proof of that element can then be devastated by the hidden evidence. The defense does not "deserve" to keep relevant evidence from the jury, but it does deserve to have compliance with the rules of discovery so that it can properly prepare for trial.
¶ 50. Next the State argues that the point was waived because the defense elicited the evidence from a State witness. This has the same defect as the first point. By failing to disclose evidence in discovery, the State creates the potential that the defense will itself uncover the evidence as *935 it attempts to show the defect in the State's case. Here the defense was questioning the witness about the dearth of evidence linking Mills to the truck. "Au contraire," the witness triumphantly announces, "we have this receipt." To let that unintentional uncovering by the defense waive the failure to disclose destroys the purpose of discovery.
¶ 51. A similar situation would be in a murder case with some circumstantial evidence but no direct proof insofar as discovery revealed. A State's witness on cross-examination by the defense counsel reveals for the first time that a fingerprint was found on the murder weapon after all and it happens to be that of the defendant. Once the rule was created that the State must provide discovery to the defense when requested, that necessitates that the discovery be accurate. It was not here.
¶ 52. The State finally argues that the receipt was just discovered the day before trial. I accept the accuracy of the statement. Since it was found the day before trial, that new and significant evidence needed to be disclosed immediately and not held in reserve.
¶ 53. I would reverse and remand for a new trial.
McMILLIN, C.J., and MOORE, J., join this separate opinion.